UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY J. CHANEY,            ) | |
|                              ) | |
| Plaintiff,   ) | |
|                              ) | |
| vs.                          ) | |
|                              ) | No. 1:12-cv-01062-MJD-JMS |
| CAROLYN W. COLVIN Acting     ) | |
| Commissioner of the Social Security ) | |
| Administration,              ) | |
|                              ) | |
| Defendant.   ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Anthony Chaney requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

### I. Procedural History

Chaney filed an application for DIB and SSI on January 14, 2009, alleging an onset of disability of February 28, 2005. Chaney's applications were denied initially on April 8, 2009 and on reconsideration on June 5, 2009. Chaney requested a hearing, which was held on October 5, 2010 before Administrative Law Judge Angela Miranda ("ALJ"). The ALJ denied Chaney's applications on March 18, 2011. The Appeals Council denied Chaney's request for review on

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

May 31, 2012, making the ALJ's decision the final decision for purposes of judicial review. Chaney filed his Complaint with this Court on July 31, 2012.

## II.      Factual Background and Medical History

Anthony Chaney had past relevant work experience as an industrial maintenance worker. He was attacked and beaten in April 2003 resulting in a head injury with skull fracture. He sought treatment from Katherine Kobza, M.D. in June 2004 for resultant diplopia (double vision), headaches, and post-traumatic stress disorder. Dr. Kobza noted that Chaney wears a prism for his glasses for the diplopia. Dr. Kobza took Chaney off of work on February 22, 2005 for treatment and therapy.[2] On May 15, 2005, Dr. Kobza found that Chaney was "back to normal" and cleared him to return to work without any complications as of July 1, 2005.

Chaney also has a history of alcohol abuse. On a follow-up visit in July 2005, Dr. Kobza reported that Chaney was doing much worse, citing to lack of a good support. Dr. Kobza also reported that Chaney was heavily drinking again and having problems with his wife. On follow up appointments, Chaney reported doing better, but continued to drink, although not as heavily. On December 21, 2005, Dr. Kobza indicated that the diplopia was improving as the prisms were removed from Chaney's glasses. Chaney also reported that he stopped drinking. Dr. Kobza opined that if the social stressors were to decrease, then he would be doing even better. Although Chaney continued not to drink, Dr. Kobza diagnosed Chaney with depression on March 29, 2006, citing to an increase in psychosocial stressors related to the divorce from his wife. On May 26, 2006, Dr. Kobza again cleared Chaney to return to work.

Chaney returned to Dr. Kobza on September 27, 2006 where he continued to have social stressors, intermittent headaches and now an increase in neck pain, which was low grade but

---

[2] Chaney alleged onset of disability on February 28, 2005.

constant for many years. In November 2007, Chaney reported to Dr. Kobza that he had been in a motorcycle accident which aggravated his neck pain. Chaney continued to see Dr. Kobza through December 2008.

In December 2008, Chaney began experiencing hip pain. He was diagnosed with avascular necrosis of bilateral hips. Chaney had three surgeries on the left hip: January 2009 for left hip cord decompression; April 2009 for left hip vascularized fibular graft and core decompression and cancellous grafting of the left femoral head; and September 2010 for left total hip arthroplasty.

Chaney saw State agency physician Dr. Wang for a disability consultative examination in March 2009. Although Chaney reported seeing double or triple vision when looking all the way up or all the way down, Dr. Wang did not observe any abnormal movement of the bilateral eyes and that examination of the eyes was normal. Dr. Wang also provided for limitations regarding Chaney's hip and neck pain including restrictions in standing and walking and recommended that Chaney should avoid overhead work.

In October 2010, orthopedic surgeon Dr. Baird conducted a follow-up examination from the last surgery. Dr. Baird reported that Chaney was doing excellent, with no complaints and very minimal pain.

### III.   Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[3] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in

writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

The ALJ first determined that Chaney met the insured status requirements of the Act through June 30, 2011. Applying the five-step analysis, the ALJ found at step one that Chaney had not engaged in substantial gainful activity since the alleged onset date of February 28, 2005. At step two, the ALJ found that Chaney had the following severe impairments: status post head injury with skull fracture and history of resultant diplopia/subjective diplopia; headaches; alcoholism; mental impairments variously described as likely bipolar, depression, anxiety, adjustment disorder, and post-traumatic stress disorder; cervical radiculopathy with disc extrusion at C4-5 and marginal ostophyte formation; and hip dysfunction described as lytic lesions bilaterally/osteonecrosis, status post hip cord decompression/fibular graft and left hip arthroplasty.

At step three, the ALJ determined that Chaney did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 4040.1526, 416.920(d), 416.925 and 416.926).

The ALJ found that Chaney had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with postural, manipulative, and mental limitations. Specifically, the ALJ found that Chaney has the capacity to occasionally lift and carry up to 10 pounds and to frequently lift and carry light articles weighing less than 10 pounds; stand and/or walk up to 2 hours in an 8 hour work day and sit up to 6 hours in an 8 hour work day; push and pull up to the capacity for lifting and carrying; frequently balance and occasionally stoop, crouch, and climb stairs and ramps; kneeling and crawling less than occasionally; occasionally reach overhead, but no other reaching limitations; understand, remember and carry out simple, routine tasks; interact with supervisors, coworkers, and the general public;  and identify and avoid normal work place hazards and adapt to routine changes in the work place. The ALJ also found that Chaney has no limitations in the capacity to handle, finger, or in the ability to feel.

At step four, the ALJ determined that Chaney was unable to perform any past relevant work. At step five, the ALJ determined that, considering Chaney's age, education, work experience and RFC, there were jobs that existed in the national economy that Chaney could perform. Therefore, the ALJ determined that Chaney was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Chaney was not disabled. *Dixon*, 270 F.3d at 1176. Plaintiff raises three arguments on review: 1) the ALJ erred by failing to consult a medical expert at step three; 2) the ALJ erred in assessing Chaney's RFC by failing to address Chaney's diplopia and chronic headaches; and 3) the ALJ failed to meet the step five burden to show other work existed in significant numbers that Chaney could perform.

The Court finds that there is substantial evidence to support the ALJ's decision. While, admittedly, the ALJ's decision is not perfect, the burden remains on Chaney to establish disability, which Chaney fails to do.

### A. Substantial evidence supports the ALJ's step three determination.

Chaney first argues that the ALJ committed reversible error when she failed to consult a medical expert at step three to determine medical equivalency. Chaney maintains that the bilateral avascular necrosis with three surgeries to the left hip met or equaled the evidence required under Listing 1.02, Major Dysfunction of a Joint. However, Chaney fails to cite to anywhere in the record to support that assessment. Although acknowledging that Chaney has the burden to prove medical equivalency, Chaney has chosen to qualify this burden as "limited." Brief for Plaintiff at 17, *Chaney v. Colvin*, 1:12-cv-01062-MJD-JMS, ECF No. 25 [hereinafter Pl. Br.]. Instead, Chaney focuses his argument on the broad definition of "ineffective ambulation," a requirement of Listing 1.02. "Ineffective ambulation" is defined generally as requiring the use of a hand-held assistive device that limits the functioning of both upper extremities. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(1). *Moss v. Astrue*, 555 F.3d 556 (7th Cir. 2009), instructs that "the regulations further provide a nonexhaustive list of examples of ineffective ambulation such as the inability to walk without the use of a walker or two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to carry out routine ambulatory activities, like shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single handrail." *Moss*, 555 F.3d at 562; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2) . Plaintiff argues that it was error for the ALJ to only consider whether Chaney used a hand-held assistive device that limits the functioning of both upper extremities. While arguing that the ALJ did not consider the

nonexhaustive list, Chaney has failed to point to anywhere in the record to show ineffective ambulation through the nonexhaustive list.

Chaney also argues that a new medical opinion was needed due to Chaney's "worsening" condition demonstrated by the requirement of the left hip replacement. However, an updated medical opinion is only required "[w]hen additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment." SSR 96-6p, 1996 WL 374180 (July 2, 1996) (emphasis added). The ALJ did not find, nor did Chaney cite to, any evidence that the State agency's opinion would change on the issue of medical equivalency based on the subsequent surgeries. As the ALJ noted, progress reports after the final surgery showed that Chaney reported "doing excellent," had no complaints, and "very minimal pain." [R. at 1036.][4] Dr. Baird also noted that Chaney could stand and walk without difficulty and had an overall stable left hip. [*Id.*] Therefore, an updated medical opinion was not needed.

### B.     Substantial evidence supports the ALJ's RFC finding.

Chaney next argues that the ALJ erred in assessing the RFC by failing to address Chaney's diplopia, chronic headaches, and neck pain. The ALJ's RFC analysis consists of a very detailed discussion of Chaney's medical history, including numerous accounts of Chaney's diplopia, headaches, and neck pain. [R. at 36, 37, 38, 40.] The record also indicates that diplopia did not seem to be an issue after December 21, 2005 when Dr. Kobza noted that the diplopia was "improving such as the prisms were removed from glasses." [R. at 321.] Despite the lingering diplopia from the 2003 attack, Dr. Kobza cleared Chaney to go back to work on more than one

---

[4] The record shows that additional medical evidence was supplied by Chaney's attorney after the ALJ's decision. Chaney did not argue that this Court should consider this additional medical evidence. Because Chaney does not make an argument to consider the additional evidence, it is waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709 (7th Cir. 2012).

8

occasion without restriction, even indicating at one point that Chaney was "back to normal." [R. at 316-17, 330.] The state agency physicians evaluated Chaney in 2009 and opined that Chaney had no visual limitations and a normal eye examination. [R. at 907, 915.] Chaney does not cite to any problems, difficulties, or worsening of diplopia. The ALJ also accounted for the neck pain in limiting Chaney to occasional lifting overhead. Because the ALJ's RFC analysis discussed Chaney's diplopia, headaches, and neck pain, the Court finds that the ALJ considered this as part of the RFC and is therefore supported by substantial evidence.

### C. Substantial evidence supports the Commissioner's step five determination.

Finally, Chaney argues that the ALJ failed to meet the Commissioner's step five burden to show that other work existed in significant numbers that Chaney could perform. Chaney argues that, since the ALJ found that Chaney had moderate limitations in concentration, persistence, or pace, then this limitation should have been specifically communicated to the vocational expert. The ALJ limited Chaney to simple, repetitive tasks, thus accounting for the moderate limitation in concentration, persistence, or pace. The jobs provided by the vocational expert are consistent with this limitation. Chaney also argues that the ALJ failed to communicate to the vocational expert Chaney's problems with diplopia. As discussed above, the ALJ's RFC analysis considered Chaney's diplopia and substantial evidence supports the ALJ's overall determination of RFC. Therefore, the Commissioner met its step five burden to show that other jobs existed in the national economy that Chaney could perform.

### VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Chaney is not disabled and the Commissioner's decision is **AFFIRMED**.

Date: 06/14/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Annette Lee Rutkowski
LAW OFFICES OF ANNETTE RUTKOWSKI
Anetrutkowski@gmail.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov